FILED ___ ENTERED
___ LOGGED ___ RECEIVED

SEP 27 2013

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY



FILED
SEP 19 2013
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# SEALED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

December 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13CR3481BTM |
| Plaintiff, | INDICTMENT |
| v. | Title 18, U.S.C., Sec. 1349 – Conspiracy to Commit Bank Fraud; Title 18, U.S.C., Sec. 1028A – Aggravated Identity Theft; Title 18, U.S.C., Sec. 982(a)(2) – Criminal Forfeiture |
| KAREN GALSTIAN (1), aka Kachal, VAHAG STEPANYAN (2), aka Misha, GEORGE KARAPETIAN (3), aka Jora, ARA ADAMYAN (4), CHRISTOPHER BUCKELY (5), CARLOS FERRUFINO, JR. (6), AKOP GALSTIAN (7), FARBOB GOLHASSANI (8), PAUL GONNELLY, JR. (9), TATYANA KARBACHINSKAYA (10), MARIA KHARITONOVA (11), ALISA NOVIKOVA (12), DAVID MEGUERIAN (13), ASHOT MNATSAKANYAN (14), SEDRAK MOVESYAN (15), ROBERT T. RODRIGUEZ (16), CHRISTOPHER RUIZ (17), VARDGES VARDANYAN (18), Defendants. | 13-2344SAG |

PJM:nlv:San Diego(1):9/19/2013

The grand jury charges:

## INTRODUCTION

1. Bank of America ("BoA") is a "financial institution" as defined by Title 18, United States Code, Section 20. BoA provides a wide range of consumer financial services, including personal and business banking services. As part of its banking services, BoA manages deposits and withdrawals of money into and out of customer bank accounts.

2. BoA typically places certain restrictions on a customer's bank account whenever a check is deposited into the account, in part to ensure that the check is backed by sufficient funds. A "hold" is the period of time that funds from deposited checks are unavailable in a recipient account. The length of a hold typically depends on several criteria, including the period of time an account has been opened, transactional history, and the account's average balance. In general, banks will shorten or eliminate the hold on funds from deposited checks as an account establishes a history of positive activity (e.g., stable transactional history, high average balance).

3. A "bad check" is a check with insufficient funds in the account issuing the check.

4. A "bust-out" account refers to an account at BoA into which bad checks were deposited and from which funds would be withdrawn even though there were insufficient funds in the account.

5. A "seed" account refers to a bank account, typically maintained at a national bank other than BoA, which the coconspirators used to establish transactional histories within bust-out accounts (in order to shorten or eliminate the hold on deposited checks), and to issue bad checks to bust-out accounts to allow for the fraudulent withdrawal of funds.

6. Personal identity information ("PII") means any name, address, date of birth, Social Security number, access code, access device or account number, driver's license

number, personal identification number ("PIN"), telephone number, signature, and other means of identification.

7. "Identity theft victim" means any real person whose PII was obtained and used by others without lawful authority.

## Count 1

## CONSPIRACY

## (18 U.S.C. § 1349)

8. The Grand Jury hereby realleges, and incorporates by reference paragraphs 1 through 7 of this Indictment as if fully set forth herein.

9. Beginning in or about September 2011, the exact date unknown to the Grand Jury, and continuing through at least April 2012, within the Southern District of California and elsewhere, defendants KAREN GALSTIAN (1), aka Kachal, VAHAG STEPANYAN (2), aka Misha, GEORGE KARAPETIAN (3), aka Jora, ARA ADAMYAN (4), CHRISTOPHER BUCKELY (5), CARLOS FERRUFINO, JR. (6), AKOP GALSTIAN (7), FARBOB GOLHASSANI (8), PAUL GONNELLY, JR. (9), TATYANA KARBACHINSKAYA (10), MARIA KHARITONOVA (11), ALISA NOVIKOVA (12), DAVID MEGUERIAN (13), ASHOT MNATSAKANYAN (14), SEDRAK MOVESYAN (15), ROBERT T. RODRIGUEZ (16), CHRISTOPHER RUIZ (17), and VARDGES VARDANYAN (18), did knowingly and intentionally conspire and agree with each other and others to knowingly execute, and attempt to execute, a scheme and artifice to defraud a financial institution, that is BoA, as to material matters, in violation of Title 18, United States Code, Section 1344(1).

## Manner and Means of the Conspiracy

10. The defendants and their coconspirators, both known and unknown to the Grand Jury (the "coconspirators"), used the following manner and means to carry out the objects of conspiracy:

3

11. The coconspirators opened seed accounts in their names and in the names of fictitious business entities at national banks, including Citibank, U.S. Bank, and Wells Fargo Bank, and funded these accounts with seed money.

12. The coconspirators opened bust-out accounts at BoA, commonly in the names of fictitious business entities.

13. The coconspirators funded these bust-out accounts with money from seed accounts and money from fraudulently obtained tax refunds, which were obtained using false and fraudulent U.S. Individual Income Tax returns ("Forms 1040") submitted by coconspirators to the Internal Revenue Service ("IRS") in the names of identity theft victims.

14. The coconspirators transferred funds between seed and bust-out accounts, as well as between bust-out accounts, to induce BoA to reduce the length of the hold placed on funds derived from checks deposited into bust-out accounts, and to test whether the hold had been shortened or eliminated.

15. After ensuring that BoA shortened or eliminated a hold placed on deposited checks, the coconspirators wrote bad checks from seed accounts and deposited them into bust-out accounts, and immediately withdrew funds from the bust-out accounts. This typically took place within a matter of minutes or hours after BoA lifted the hold on the deposited check, but before BoA determined that the issuing seed account did not contain sufficient funds to cover the bad check.

16. The coconspirators obtained the fraudulently withdrawn money in several ways, including through cash withdrawals (either at a teller window or an ATM) and by cashing large checks at BoA branch locations drawn on bust-out accounts.

17. The coconspirators communicated information relevant to the conspiracy through a variety of means designed to conceal their criminal activity and frustrate law enforcement, including: (a) using coded and ambiguous language to refer to various aspects of the conspiracy; (b) avoiding the use of their real names and instead referring to

each other by nicknames; (c) changing phones on a regular basis; and (d) meeting in crowded, public places.

18. The coconspirators operated other aspects of the conspiracy in a manner designed to conceal their criminal activity and frustrate law enforcement, including: (a) conspiring with foreign nationals who were in the United States on short-term visas to open and maintain seed and bust-out accounts; (b) opening and maintaining bank accounts (particularly bust-out accounts) in the names of fictitious businesses; (c) renting mailboxes at commercial mail receiving agents (e.g., UPS) in the name of the fictitious businesses; and (d) leasing or renting cars, often in the names of others, for short periods of time.

19. Using more than 60 bust-out accounts, the coconspirators defrauded BoA out of more than $680,000.

All in violation of Title 18, United States Code, Section 1349.

## Counts 2 through 4
## AGGRAVATED IDENTITY THEFT
## (18 U.S.C. § 1028A)

20. The Grand Jury hereby realleges, and incorporates by reference paragraphs 1 through 7 of this Indictment as if fully set forth herein.

21. On or about the dates set forth below, within the Southern District of California and elsewhere, defendants KAREN GALSTIAN (1), aka Kachal, and VAHAG STEPANYAN (2), aka Misha, knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name and Social Security number of another person (listed below by initials only), knowing that the means of identification belonged to another person, during and in relation to a felony violation of Title 18, United States Code, Section 1349, conspiracy to commit bank fraud:

5

| COUNT | DATE | VICTIM |
|---|---|---|
| 2 | August 2011 | O.D. |
| 3 | August 2011 | C.C. |
| 4 | October 2011 | R.M. |

All in violation of Title 18, United States Code, Section 1028A.

## CRIMINAL FORFEITURE ALLEGATIONS

22. The allegations contained in this Indictment are realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

23. Upon conviction of the offense of conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349, as set forth in Count 1, defendants KAREN GALSTIAN (1), aka Kachal, VAHAG STEPANYAN (2), aka Misha, GEORGE KARAPETIAN (3), aka Jora, ARA ADAMYAN (4), CHRISTOPHER BUCKELY (5), CARLOS FERRUFINO, JR. (6), AKOP GALSTIAN (7), FARBOB GOLHASSANI (8), PAUL GONNELLY, JR. (9), TATYANA KARBACHINSKAYA (10), MARIA KHARITONOVA (11), ALISA NOVIKOVA (12), DAVID MEGUERIAN (13), ASHOT MNATSAKANYAN (14), SEDRAK MOVESYAN (15), ROBERT T. RODRIGUEZ (16), CHRISTOPHER RUIZ (17), and VARDGES VARDANYAN (18), shall forfeit to the United States any property constituting or derived from proceeds traceable to such offenses, including but not limited to a sum of money equal to the total amount of proceeds obtained directly or indirectly as a result of the offenses. The property to be forfeited includes, but is not limited to, the following: gross proceeds of approximately $689,000.

//
//
//

24. If any of the property described above, as a result of any act or omission of defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), made applicable herein by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the said property described above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(2).

DATED: September 19, 2013.

A TRUE BILL

— SIGNATURE REDACTED

Foreperson

LAURA E. DUFFY
United States Attorney

By: *[signature]*
PETER J. MAZZA
JOSEPH S. GREEN
Assistant U.S. Attorneys
TIMOTHY J. STOCKWELL
Special Assistant U.S. Attorney

I hereby attest and certify on 9/20/13
That the foregoing document is a full, true and correct
copy of the original on file in my office and in my legal
custody.
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By_____ Deputy